D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WILLIAM BROWN,

                              Petitioner,

        -against-

UNITED STATES OF AMERICA,

                              Respondent.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-4235 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner William Brown ("Brown" or "Petitioner"), who is currently incarcerated at the United States Penitentiary Satellite Camp in Lewisburg, Pennsylvania, brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 (the "Petition"). (See Pet. (Dkt. 1).) In his Petition, Brown asks for additional time to file a federal habeas petition or similar filing; he asserts claims of ineffective assistance of counsel and alleges that the testimony of a Government witness was coerced. For the following reasons, Brown's Petition is DENIED.

I.     **BACKGROUND**

    A.     **Procedural History**

On October 14, 2005, following a three-week jury trial before this court, Petitioner was convicted of one count of conspiracy to commit securities fraud, five substantive counts of securities fraud, one count of conspiracy to commit money laundering, and nine substantive counts of money laundering. (Jury Verdict as to William G. Brown & Vlad Goldenberg (Trial Dkt. 345).)[1] The jury also rendered a $1.231 million forfeiture verdict against Brown, which

---

[1] Citations referencing "Dkt." are documents from the file of this civil case, Brown v. United States, No. 11-CV-4235 (NGG) (E.D.N.Y.). Citations referring to "Trial Dkt." are documents filed during Petitioner's related criminal proceedings, United States v. Pirgousis, No. 04-CR-159 (NGG) (E.D.N.Y.). "Trial Transcript" or "Tr." refers to the transcript of Petitioner's criminal trial, United States v. Pirgousis, No. 04-CR-159 (NGG) (E.D.N.Y.), which is filed

1

required him to forfeit the real property at 100 St. Mary's Avenue, Staten Island, New York. (Jury Verdict on Forfeiture as to William G. Brown & Vlad Goldenberg (Trial Dkt. 347).)

After trial, Brown moved pursuant to Rules 33 and 33.2(a) of the Federal Rules of Criminal Procedure to vacate the judgment against him and for a new trial. (Mot. to Set Aside Verdict and Forfeiture J. as to William G. Brown (Trial Dkt. 317).) The court denied Brown's motion. United States v. Brown, No. 04-CR-159 (NGG), 2006 WL 898043 (E.D.N.Y. Apr. 4, 2006). On December 15, 2006, this court sentenced Brown to a total of 180 months of imprisonment, and ordered Brown to pay $14,563,848.30 in restitution and a $1,600 special assessment. (J. as to William G. Brown (Trial Dkt. 401).) The Second Circuit affirmed Brown's conviction on appeal, on August 14, 2008. United States v. Pirgousis, 290 F. App'x 388 (2d Cir. 2008) (summary order).

By letter dated August 19, 2009, Brown moved for an extension of time to file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. (Mot. for Extension of Time to File a Federal Habeas Corpus or Similar Filing (Trial Dkt. 451).) In an Order dated September 8, 2009, the court advised Petitioner that the timeliness of his proposed habeas petition would be reviewed when he submitted the full petition to the court. (Sept. 8, 2009, Order (Trial Dkt. 452).) The September 8, 2009, Order also stated clearly that Brown's petition should include the dates and results of any appeals of the judgment "as well as any other basis for Brown's argument that his time to file should be extended." (Id. at 1.)

Brown submitted the instant Petition, which is styled as a letter to the court again requesting an extension of time, on August 30, 2011. (Pet.) The court advised Brown that, due to the content of that letter and of two additional letters (May 31, 2012, Pet'r Ltr. (Dkt. 9);

---

at Trial Dkts. 350-359, and citations referencing "Gov't. Ex." refer to exhibits entered into evidence by the prosecution at Petitioner's criminal trial.

June 1, 2012, Pet'r Ltr. (Dkt. 10)), it was inclined to construe his August 30, 2011, letter as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, and it directed Brown to inform the court whether he (1) agreed to that characterization or (2) withdrew the petition. (July 30, 2012, Mem. & Order (Dkt. 11)).) See Adams v. United States, 155 F.3d 582, 584 (2d Cir. 1998) ("[D]istrict courts should not recharacterize a motion purportedly made under some other rule as a motion made under § 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized."). The court also advised Petitioner to be "particularly cautious about requesting that the court construe his letter as a § 2255 petition because it appear[ed] that such a petition might be time-barred under § 2255's one-year period of limitation." (July 30, 2012, Mem. & Order at 2.) Petitioner was directed to show cause why his habeas petition was not time-barred, should he choose to have it so characterized. (Id. at 3-4.) Petitioner affirmed that he wished his August 30, 2011, letter to be characterized as a § 2255 petition. (Applicant's Affirmation (Dkt. 12).)

**B.     The Fraudulent Scheme and Brown's Role Therein**

At Petitioner's trial, the Government established the existence of a "boiler room" securities fraud scheme operated out of the Staten Island branch office of Delta Asset Management ("Delta"), a brokerage firm that Brown co-owned and managed. The fraudulent scheme involved Delta brokers convincing Delta customers to purchase certain securities at artificially inflated prices. Brown, 2006 WL 898043, at *1. The stock promoters who sold those "house stocks," in turn, paid kickbacks to Brown and other Delta employees totaling millions of

3

dollars. (Id.) The Government presented its trial evidence through the testimony of three general categories of witnesses: (1) law enforcement and other regulatory officials employed by the National Association of Securities Dealers ("NASD"), the Securities and Exchange Commission ("SEC"), and the Federal Bureau of Investigation ("FBI"); (2) several cooperating witnesses, former co-defendants who pleaded guilty to various charges; and (3) certain victims of the fraudulent scheme. (Id. at *1-2.) The evidence overwhelmingly established that Brown—along with his partner, Gary Todd[2]—was one of the co-owners and managers of the Staten Island branch office of Delta, and that he was involved in the fraudulent stock sales conducted at the firm.

Before opening Delta, Brown had been working as a registered broker with Todd out of an office in Staten Island affiliated with Russo Securities. (See Trial Transcript ("Tr.") 767-768.) Brown and Todd also conducted business through Continental International Trading, later called Continental Consulting, where they were partners. (Tr. 362-363, 768.) They employed around ten brokers at their busiest time. (Tr. 768-770.) Around 1997, while working out of Russo Securities, Brown met Nick Pirgousis.[3] (Tr. 767-768.)

Pirgousis and his own business partner obtained large blocks of stocks in thinly traded start-up companies, and they sold them to brokerage firms in return for kickbacks. (Tr. 705-706.) Pirgousis entered into such an arrangement with Brown and Todd: They agreed that Pirgousis would provide Brown and Todd a 50 percent commission for all sales of a particular stock—American Senior Financial Services—that Brown and Todd sold to their clients.

---

[2] Todd pleaded guilty to one count of conspiracy to commit securities fraud and one count of securities fraud. (See J. as to Gary Todd (Trial Dkt. 299).)

[3] Pirgousis pleaded guilty to one count of conspiracy to commit securities fraud, one count of securities fraud, and one count of conspiracy to commit money laundering. (See J. as to Nick Pirgousis (Trial Dkt. 442).) Pirgousis testified at Brown's trial as a cooperating witness. See United States v. Brown, 2006 WL 898043, at *2.

4

(Tr. 770.) Pirgousis, Brown, and Todd engaged in several similar kickback arrangements over the next two-and-a-half years, while Brown and Todd continued to work out of the Russo Securities offices. (Tr. 770-72, 784.) At Russo Securities, Brown allowed unlicensed brokers who worked for him to use his name when conducting business with clients on the telephone. (Tr. 364-365, 374-375, 773-76.) Several of the brokers who were later involved in the scheme at Delta first worked with Brown at Russo Securities. (Tr. 349, 362, 366, 713-714, 773-774, 791.)

In approximately early 2000, Brown and Todd left Russo Securities to start their own broker-dealer. (Tr. 784, 786.) Pirgousis owed Brown and Todd money from a prior deal or deals during their tenure at Russo Securities, and Pirgousis purchased the real property at 100 St. Mary's Avenue for Brown and Todd, as a type of kickback. (Tr. 784-785, 787-88.) In early 2000, Brown and Todd opened up their brokerage firm, under the name E Street Access, operated out of 100 St. Mary's Avenue. (Tr. 378-379, 787.) Subsequently, in late 2000, Brown and Todd changed the name of their firm, and they opened up the Staten Island branch of Delta Asset Management, also operated out of 100 St. Mary's Avenue. (Tr. 183-185, 789-90.) The title of the property was later transferred into Brown's wife's name. (See Tr. 686, 784-87, 1290; Gov't Ex. 1718.) At Delta, the kickback scheme continued. (E.g., Tr. 786, 790, 806-811, 880-882, 891-903.)

At Delta, Brown directed Mario Rodriguez, one of the only licensed brokers employed by the Staten Island branch (2-4 licensed brokers out of 15-20 employees) to allow unlicensed brokers to use his name when speaking with clients, and to change the name on his broker's license to sound "less ethinic." (Tr. 182, 188, 193-195, 326.) Accordingly, unlicensed brokers used that broker's d/b/a name ("Mario Casais") when soliciting several large clients to invest in securities, including those that generated the kickbacks. (Tr. 65-78, 93-94, 106, 110-119, 122,

5

130-131, 162, 164, 175, 189, 197, 201-209, 227-229, 261-262, 267-268, 328, 347-349, 388-390, 397, 400, 512-514, 517-518, 520, 526-527, 792, 836-837.) Rodriguez testified at trial that Brown was "one of [his] bosses" at Delta, that Brown "was a partner along with Gary Todd," and that Brown and Todd shared an office and together owned the Staten Island branch. (Tr. 161, 186-187, 190, 200, 212, 318-319, 325.) Mark Shreyberg, an unlicensed broker, also testified that Brown and Todd were partners at Delta, and co-owners of the Staten Island branch (Tr. 347-348, 363, 368, 386-387, 418-419), as did Roman Paskinkovsky, the Delta Staten Island branch manager (Tr. 484, 488, 506-507; see also, e.g., Tr. at 786-791 (Pirgousis testifying that Todd and Brown shared an office at Delta and controlled the business)).

As noted above, Brown and Todd also owned another business, Continental Consulting; Continental Consulting, which was later renamed B&G Consulting, also operated out of 100 St. Mary's Avenue, and served as a front designed to conceal Brown and Todd's control of Delta and the kickbacks paid to Brown and Todd by Pirgousis. (Tr. 186-90, 215-219, 325, 365-366, 384, 386, 388, 408, 419-420, 489, 491-492, 507-512, 638-643, 672-673, 717, 753-757, 808, 873-874, 877-880.) Pirgousis frequently paid the kickbacks by transferring money to Continental/B&G Consulting (Tr. 753-757, 808, 817, 879-882, 885-903; see also Tr. 847, 923-924 (transferring shares)); at other times, Pirgousis paid the kickbacks by transferring money to bank accounts controlled by two jewelry stores, and those stores converted the money into cash for Brown and Todd in exchange for a fee (Tr. 855-869). Several brokers delivered large amounts of cash to and/or received large amounts of cash from Brown during the course of the scheme. (Tr. 211, 219-223, 421-423, 426-431, 531.)

When brokers were subpoenaed to testify in connection with SEC and NASD investigations into Delta's activities, Brown advised several brokers to be as vague as possible,

to say that they did not recall in response to some questions, and/or not to mention that Brown and Todd owned the firm. (Tr. 170-174, 312, 326, 487-489; see also Tr. 631-632, 751-754.)

## II. DISCUSSION

### A. 28 U.S.C. § 2255

Under 28 U.S.C. § 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner who was sentenced in federal court "may move the court which imposed the sentence to vacate, set aside, or correct" a conviction or sentence that was imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). In § 2255 proceedings, a petitioner bears the burden of proof by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b).

Brown's Petition is not styled as a § 2255 motion. Instead, for the second time, he asks the court for "some extension of time" in which to file a "federal habeas corpus or similar filing."[4] (Pet. at 1, 2.) However, in addition to this request for additional time, the Petition also includes substantive allegations. (See id. at 1-2.) Pro se litigants are entitled to a liberal construction of their pleadings, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam), and the Second Circuit has held that "[w]here a motion, nominally seeking an extension of time, contains allegations sufficient to support a claim under section 2255, a district court is empowered, and in

---

[4] As explained above, Brown originally filed a letter motion, dated August 19, 2009, requesting an extension of time to file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. (Mot. for Extension of Time to File a Federal Habeas Corpus or Similar Filing (Trial Dkt. 451).) In response to that motion, the court advised Petitioner that the timeliness of his proposed habeas petition would be reviewed when he submitted the full petition to the court, and that his petition should include the dates and results of any appeals of the judgment "as well as any other basis for Brown's argument that his time to file should be extended." (Sept. 8, 2009, Order (Trial Dkt. 452).)

7

some instances may be required, under Haines to treat that motion as a substantive motion for relief under section 2255." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001). Because Brown's Petition alleges substantive claims of ineffective assistance of counsel and coerced witness testimony, it is properly construed as a § 2255 motion.

### B. Statute of Limitations

Under AEDPA, § 2255 habeas corpus petitions are subject to a one-year statute of limitations. The one-year limitations period begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The Second Circuit affirmed Brown's conviction on April 14, 2008; accordingly, his conviction became final on November 12, 2008.[5] See Clay v. United States, 537 U.S. 522, 525, 535 (2003) (the conviction of a federal criminal defendant who takes an unsuccessful direct appeal but does not petition the United States Supreme Court for certiorari becomes "final" under § 2255 when the time to file his petition for certiorari expires); see also Sup. Ct. R. 13 (setting the expiration of time for filing a petition for certiorari at ninety days after entry of the

---

[5] Brown did not petition the United States Supreme Court for certiorari.

8

judgment of the Court of Appeals). Brown filed the instant Petition on August 30, 2011—almost three years after his conviction became final. Accordingly, the Petition is untimely under § 2255(f)(1) unless Brown can demonstrate that he satisfies one of the (f)(2)-(4) prongs.[6]

1. 28 U.S.C. §§ 2255(f)(2), 2255(f)(4)

The court liberally construes Brown's filings to assert that the Petition is timely under § 2255(f)(2) and/or § 2255(f)(4), because of Brown's unsuccessful attempt to obtain a copy of a document that was entered into evidence at his criminal trial. Brown argues that he discovered "new evidence" consisting of an "NASD Form that alleged [his] acceptance of responsibility of a branch office of Delta Asset Management" (Pet. at 1), and that he unsuccessfully sought to obtain this document under the Freedom of Information Act ("FOIA") (id. at 2). In effect, he argues that his inability to obtain the NASD document through his FOIA request is a governmental impediment which, when removed, would restart the one-year limitations period, see § 2255(f)(2), and that this document constitutes "new evidence," the discovery of which would also begin anew the one-year limitations period, see § 2255(f)(4).

Indeed, some courts have suggested that in certain circumstances, the government's failure to fulfill a FOIA request could implicate both of these provisions—constituting a governmental impediment to a petitioner's ability to file for habeas corpus relief within the meaning of § 2255(f)(4), and demonstrating the "due diligence in attempting to obtain the materials" required to trigger § 2255(f)(2). See Edmond v. U.S. Attorney, 959 F. Supp. 1, 4 (D.D.C. 1997). However, it is not sufficient for a petitioner to show that he did not receive documents requested of the government; the petitioner must also show how the failure to receive

---

[6] Brown's earlier motion to extend his time to file a § 2255 petition (Trial Dkt. 451) does not affect the timeliness of the instant Petition. The proper time to rule on the timeliness of a § 2255 petition is after it has been filed. United States v. Leon, 203 F.3d 162, 164 (2d Cir. 2000) (per curiam) ("A federal court lacks jurisdiction to consider the timeliness of a § 2255 petition until a petition is actually filed.").

those documents impeded his ability to file a timely petition. See Felix v. Artuz, No. 98-CV-6703 (HB), 2000 WL 278077, at *2 (S.D.N.Y. Mar. 14, 2000) (distinguishing case from Edmond because petitioner ultimately filed the (untimely) petition without possession of the document in question, thereby demonstrating that he could have filed it within the statutory period before receiving the document); see also Sorce v. Artuz, 73 F. Supp. 2d 292, 298 (E.D.N.Y. 1999) ("Edmond stands for the wholly unremarkable proposition that AEDPA's time period does not begin to run, in cases of newly discovered evidence, until the time when the petitioner should have discovered the facts supporting his claim. Where a request for documents reveals new information relevant to a petitioner's claim no toll is necessary for a habeas petition to be timely. Instead, it is the possession of the relevant evidence that starts the running of the statute anew." (emphasis added)).

The document that Brown seeks appears to be a branch office agreement for the Staten Island branch of Delta, the parties to which are Brown and Delta Asset Management, and which contains Brown's signature. (See Gov't Exs. 503, 827; Tr. 647-650, 687-690; Pet. at 1-2; June 1, 2012, Pet'r Ltr. at 1-2; Applicant Affirmation at 2-3; Apr. 9, 2012, Pet'r Ltr. (Trial Dkt. 473) at 2; see also Tr. 738, 1408 (noting that Gov't Exs. 503 and 827 are copies of the same document).) Brown, by his own admission, has long known about the NASD document—even prior to his trial. Brown explains that "Miss Alice Barone alerted [him] to the existence of [the document] after the indictment" (Pet. at 2), and he acknowledges that its "significance . . . was stressed in a pretrial conference" (Applicant's Affirmation at 3). Furthermore, as Brown states in his Petition, the document was "entered as evidence" at his criminal trial (id. at 1-2; see also Gov't Exs. 503, 827; Tr. 647-650, 687-690); accordingly, it would be improper to consider the NASD document newly-discovered evidence within the meaning of § 2255(f)(4). Similarly,

in spite of Brown's efforts to obtain the document through his FOIA request, Brown knew about the document early on and could have filed his Petition in a timely manner without possession of the NASD document, as he ultimately did—illustrating that his failure to obtain the document does not qualify as a § 2255(f)(2) governmental impediment. See Feliz, 2000 WL 278077, at *2 (holding that petitioner failed to establish applicability of § 2255(f)(2) or § 2255(f)(4) where he eventually filed his untimely petition without the receipt of the transcripts he sought, as the failure to receive the documents clearly had not prevented him from filing).

2. 28 U.S.C. § 2255(f)(3)

In a post-Petition filing, Brown asserts a claim premised on his trial counsel's failure to advise him with respect to a possible plea agreement, constituting ineffective assistance of counsel pursuant to Lafler v. Cooper, 132 S.Ct. 1376 (2012), and/or Missouri v. Frye, 132 S. Ct. 1399 (2012). Specifically, Brown claims that while driving to trial, his attorney mentioned that he had a dialogue with the prosecutor but that the "deal offered was not acceptable to him." (Applicant Affirmation at 5.) Brown suggests that his Petition is timely pursuant to § 2255(f)(3) because these cases were decided after the date of his Petition. (Id.) This argument fails. The Second Circuit has held that Lafler and Frye are applications of Strickland v. Washington, 46 U.S. 668 (1984), and do not establish "'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court.'" Gallagher v. United States, 711 F.3d 315, 315-16 (2d Cir.2013) (per curiam) (dismissing a successive habeas corpus petition on this grounds); see also Castellano v. United States, 967 F. Supp. 2d 768, 769-70 (S.D.N.Y. 2013). Accordingly, neither Lafler nor Frye implicates 28 U.S.C. § 2255(f)(3) (beginning the one-year limitations period on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made

11

retroactively applicable to cases on collateral review"), and for Brown to have succeeded in this argument, he would have been required to raise it within one year of his conviction becoming final. See Smith v. United States, No. 13-CV-302 (RHB), 2013 WL 3490662, at *2 (W.D. Mich. July 11, 2013) (rejecting petitioner's argument that petitioner's "claims did not ripen until the Supreme Court's decision in Lafler and Frye" because the cases "did not create a new, substantive legal rule" and holding petitioner's ineffective assistance of counsel claims time-barred pursuant to § 2255(f)(3)); cf. Gallagher, 711 F.3d at 315-16; Castellano, 967 F. Supp. 2d at 769-70.

## C. Equitable Tolling

Equitable tolling is only appropriate where "'extend[ing] the statute of limitations beyond the time of expiration [is] necessary to avoid inequitable circumstances.'" Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir. 2000) (quoting Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996)); see generally Holland v. Florida, 560 U.S. 631 (2010). AEDPA's one-year limitations period "may be equitably tolled only in 'rare and exceptional circumstances.'" Garcia v. Smith, No. 11-CV-1332 (PKC), 2014 WL 905544, at *7 (E.D.N.Y Mar. 7, 2014) (quoting Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005)). A habeas corpus petitioner must "demonstrate[] that 'extraordinary circumstances prevented him from filing his petition on time' and that the petitioner 'acted with reasonable diligence throughout the period he seeks to toll.'" Garcia, 2014 WL 905544, at *7 (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam)). Accordingly, the petitioner "must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing.'" Rivera v. United States, 448 F. App'x 145, 146 (2d Cir. 2011) (summary order) (quoting Valverde, 224 F.3d at 134). Such a causal relationship is not demonstrated "if the

petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstance." Valverde, 224 F.3d at 134.

The court construes Brown's filings to contend that the absence of the NASD document prevented him from filing his habeas petition within the one-year period. However, as discussed above, Brown could have filed a petition in a timely manner without the NASD document, and indeed he did file the instant Petition without the document. Accordingly, he has not demonstrated rare and exceptional circumstances that justify equitable tolling.[7]

### D. Actual Innocence

Throughout his filings, Brown asserts his innocence. A final "gateway" to consideration of a § 2255 petition that would otherwise be time-barred by the AEDPA limitations period is a "credible and compelling claim of actual innocence." Rivas v. Fischer, 687 F.3d 514, 517-18 (2d Cir. 2012); see McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).[8] However, Brown has not met the "demanding" standard for such a claim. House v. Bell, 547 U.S. 518, 538 (2006).

The "actual innocence" exception to the AEDPA statute of limitations applies only "'where a constitutional violation has probably resulted in the conviction of one who is actually

---

[7] Brown's original motion for an extension of time to file a § 2255 petition, filed in his criminal case, asked for additional time to file because a jailhouse lawyer who was assisting Brown was confined to the Special Housing Unit for approximately 93 days, and because the law library at the institution at which he was housed was closed on Saturdays as well as Friday and Sunday evenings. (Mot. for Extension of Time to File a Federal Habeas Corpus or Similar Filing (Trial Dkt. 451).) Despite the court's advisement in its September 8, 2009, Order (Trial Dkt. 452) that Petitioner include any basis for his argument that his time to file should be extended in his full petition, Brown did not include these arguments in either his Petition or his response to the court's order to show cause why the Petition should not be dismissed as time-barred. (See July 30, 2012, Mem. & Order; Applicant's Affirmation.) Regardless, the court notes that these difficulties do not constitute "rare and exceptional circumstances" that lasted throughout the full period sought to be tolled; nor has Brown demonstrated that he acted with reasonable diligence throughout that period. Notably, Petitioner's other reasons cited for delay—"lack of finances, ignorance of the legal system and incarceration" and an attempt to obtain pro bono counsel (see Applicant's Affirmation at 4-5)—also do not rise to this level. Indeed, these are quite the opposite of "rare and exceptional circumstances," as these are difficulties faced by nearly all habeas corpus petitioners.

[8] McQuiggin and Rivas considered the 28 U.S.C. § 2244(d)(1) statute of limitations, which applies to habeas petitions filed by state prisoners. "Because the limitations language of 28 U.S.C. §2255(f) is nearly identical and the reasoning of those cases is equally applicable in this context, the court assumes that the actual innocence exception would be available to a § 2255 petitioner who satisfies its stringent standard." Qadar v. United States, No. 13-CV-2967 (ARR), 2014 WL 3921360, at *6 n.7 (E.D.N.Y. Aug. 11, 2014).

13

innocent.'" Rivas, 687 F.3d at 540 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). The Supreme Court has cautioned that a "'petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298 (1995)).

"For the claim to be 'credible,' it must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" Rivas, 687 F.3d at 541 (quoting Schlup, 513 U.S. at 324). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." Id. (quoting House, 547 U.S. at 538). At the least, the petitioner must "introduce credible new evidence that thoroughly undermines that evidence supporting the jury's verdict." Id. at 543.

Brown has not put forth new evidence sufficient to satisfy either of these requirements. Brown claims two items of "new," purportedly exonerating evidence. First, he relies upon the NASD document that he has been seeking via the FOIA request. He claims that this document was his only "link to [Delta]," and that it contains his forged signature; accordingly, he appears to believe that proof that his signature on the document was forged would exonerate him. (Pet. at 1; June 1, 2012, Pet'r Ltr. at 2; Applicant Affirmation at 3.) As explained previously, the NASD document itself cannot be said to constitute "new" evidence, as Brown was aware of it prior to his trial, and it was even entered into evidence at trial. See Rivas, 687 F.3d at 541.

14

Moreover, even if Brown were able to submit new, credible evidence of the purported forgery (for example, an expert handwriting comparison, or sworn testimony by the alleged forger), this would not constitute "compelling" evidence such that more likely than not, any reasonable juror would have reasonable doubt as to Brown's guilt. This is because Brown overestimates the importance of this document in the outcome of the trial. The facts supported by the document—Brown's ownership and management of Delta—were also supported by substantial testimony and additional documentation at trial. For example, all of the cooperating witnesses testified that Brown and Todd co-owned and controlled Delta. (E.g., Tr. 190 (Rodriguez), 386-387 (Shreyberg), 507 (Paskinkovsky), 786-790 (Pirgousis).) Among other ways, Brown illustrated his control by directing Mario Rodriguez to allow unlicensed Delta brokers to use his d/b/a name, Mario Casais, when speaking with clients. (Tr. 182, 188, 193-195, 326.) Moreover, there was substantial evidence that Continental/B&G Consulting, which Brown and Todd co-owned, was merely a shell company that served as a front to conceal Brown and Todd's control of Delta and their receipt of kickbacks, including bank records that corroborated that unlicensed Delta brokers were paid by checks drawn on Continental's account. (E.g., Tr. 186-90, 215-219, 325, 365-366, 384, 386, 388, 408, 419-420, 489, 491-492, 507-512, 638-463, 672-673, 717, 753-757, 808, 873-874, 877-880.) Additionally, Brown acknowledged under oath during testimony given before the SEC that the signature on the NASD document was in fact his. (See Tr. 669-675, 686-690; Gov't Exs. 826, 830; see also Gov't Exs. 503, 827.)

Second, Brown submits new evidence regarding allegedly coerced testimony by Mark Shreyberg, a cooperating witness who testified for the prosecution at trial. Brown encloses an affidavit from an individual named Larry Schuster, discussing statements purportedly made by Shreyberg to Schuster and other "members . . . of the New York City Russian Community."

(Schuster Aff. (May 20, 2013, Pet'r Ltr. (Dkt. 16) at 3).) In the document, Schuster claims that "on more than one occasion Mark Shreyberg stated that he was intimidated, forced and unwillingly coerced into testifying and embellishing on many issues during the jury trial of one William G. Brown where Mister Shreyberg appeared as the prosecution's government witness," and that "the United States Attorney's Prosecutor threatened him with the dis[s]olution of his family by deporting Mister Shreyberg from the United States to his homeland." (Id. at 3, ¶¶ 2-3.) In a separate filing, Brown contends that Shreyberg "called [Brown's] home after the trial, in tears," and said "his testimony was coerced with threats of deportation and the breaking up of his family." (June 1, 2012, Pet'r Ltr. at 4.)

This evidence, consisting entirely of hearsay statements, is not credible. See Qadar v. United States, No. 13-CV-2967 (ARR), 2014 WL 3921360, at *7 (E.D.N.Y. Aug. 11, 2014) ("The fact that petitioner's 'new evidence' consists entirely of hearsay statements . . . is a factor that weighs against the reliability of the evidence."). Schuster does not state any specifics regarding where or when Shreyberg purportedly made any of these hearsay statements. (See generally Schuster Aff.) And the affidavit consists, at least in part, of double hearsay, attesting to what Shreyberg allegedly stated "in the presence of . . . other members of [the New York City Russian] Community." (Id. ¶ 2.) Brown's own statement, for its part, is both self-serving and unsworn.[9]

---

[9] Notably, for years Brown has been attempting unsuccessfully to suggest that Shreyberg perjured himself at trial. In his post-trial Rule 33 motion, Brown argued that there was "newly discovered evidence" that tended to show that Shreyberg had lied when asked "whether one of the main reasons for testifying was so that his father-in-law, Gary Todd, would receive some consideration in his sentencing. At trial the witness outright denied this fact." (Affirmation in Supp. of Mot. to Set Aside Verdict and Forfeiture J. as to William G. Brown (Trial Dkt. 317) ¶ 22.) As the court explained in its denial the Rule 33 motion, the sentencing letters Brown pointed to did not prove that Shreyberg had perjured himself—they indicated only that Todd had encouraged Shreyberg to become a cooperator, not that it was part of Shreyberg's plea agreement to decrease Todd's sentence. (Apr. 4, 2006, Mem. & Order at 10-11.)

Because Brown has failed to show that the actual innocence exception applies, the court must treat his Petition as untimely.

### IV. CONCLUSION

For the foregoing reasons, Brown's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is DENIED as time-barred. Additionally, Brown's motion for release on bond pending full review of his habeas petition (Dkt. 19; Trial Dkt. 475) is DENIED as moot. Because Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York  
April 17, 2015

NICHOLAS G. GARAUFIS  
United States District Judge